Nos. 25-3573 & 26-1122

IN THE

# United States Court of Appeals for the Third Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

LAMONICA MCIVER,

*Defendant-Appellant*

On Appeal from the United States District Court
for the District of New Jersey,
No. 25-cr-388 (Semper, J.)

**BRIEF FOR FORMER PROSECUTORS OF JANUARY 6, 2021 CAPITOL SIEGE CASES AS *AMICI CURIAE* IN SUPPORT OF PETITION FOR REHEARING EN BANC**

JAMES I. PEARCE
SAMANTHA P. BATEMAN
WASHINGTON LITIGATION GROUP
1717 K St NW, Suite 1120
Washington, D.C. 20006
202-521-8750
jpearce@washingtonlitigationgroup.org
sbateman@washingtonlitigationgroup.org

*Counsel for Amici Curiae*

October 16, 2026

## CORPORATE DISCLOSURE STATEMENT

*Amici curiae* are not corporate entities and are not owned in whole or in part by any corporate entity.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........ i

TABLE OF AUTHORITIES ........ iii

INTERESTS OF *AMICI CURIAE* ........ iv

INTRODUCTION AND SUMMARY OF ARGUMENT ........ 2

ARGUMENT ........ 6

I. The Panel's Jurisdictional Holding Ignores the Unique Circumstances of This Case ........ 7

II. The Panel's Opinion Leaves Uncorrected Significant Errors By the District Court ........ 9

A. Vindictive Prosecution ........ 9

B. Selective Prosecution ........ 11

CONCLUSION ........ 13

APPENDIX: LIST OF *AMICI CURIAE* ........ 17

## TABLE OF AUTHORITIES

### Cases

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978)....................4

*Frederick Douglass Found., Inc. v. D.C.*,
82 F.4th 1122 (D.C. Cir. 2023)....................12

*United States v. Adams*,
870 F.2d 1140 (6th Cir. 1989)....................10

*United States v. Goodwin*,
457 U.S. 368 (1982)....................9

*United States v. Hollywood Motor Car Co.*,
458 U.S. 263 (1982)....................7

*United States v. Johnson*,
171 F.3d 139 (2d Cir. 1999)....................9

*United States v. MacDonald*,
435 U.S. 850 (1978)....................7

*United States v. Monsoor*,
77 F.3d 1031 (7th Cir. 1996)....................10

*United States v. Myers*,
635 F.2d 932 (2d Cir. 1980)....................8

*United States v. Washington*,
869 F.3d 193 (3d Cir. 2017)....................13

### Statutes

18 U.S.C. §111....................1

### Other Authorities

Dep't of Justice, Justice Manual....................11

Mary Clare Jalonick, *Officers who defended the Capitol on Jan. 6 say their struggles linger,* Los Angeles Times (Jan. 4, 2026)....................12

U.S. Atty's Off., Dist. of Columbia, *48 Months Since the Jan. 6 Attack on U.S. Capitol* (Jan. 6, 2025) ....................12

## INTERESTS OF *AMICI CURIAE*

*Amici curiae* ("Amici") are former federal prosecutors who collectively served for decades within the Department of Justice ("Department").[1] Among other responsibilities, Amici each prosecuted criminal cases arising out of the events at the U.S. Capitol on January 6, 2021, when thousands of people attempted to prevent Congress from certifying the results of the 2020 presidential election. Many of those January 6 defendants engaged in egregiously violent attacks against law enforcement officers, including assaults charged under the same statute at issue here, 18 U.S.C. § 111. But the government has now dismissed all the January 6 charges, including for defendants already convicted and those with pending indictments, while pressing full-steam-ahead with this prosecution of Congresswoman LaMonica McIver for conduct undertaken during a protected congressional oversight investigation.

Amici write to express their collective view that the McIver prosecution contravenes longstanding Justice Department policies and is unconstitutionally vindictive and selective. Amici urge this Court to grant

[1] A complete list of Amici and their relevant experience appears in the Appendix to this brief. No counsel for any party has authored this brief in whole or in part, and no entity or person, aside from Amici and their counsel, made any monetary contribution to fund the preparation or submission of this brief. Both parties have consented to the filing of this brief.

rehearing en banc and ultimately to exercise interlocutory appellate jurisdiction over Congresswoman McIver's vindictive and selective prosecution claims. Allowing this prosecution to proceed to trial, without any meaningful pre-trial appellate review, would violate the Congresswoman's fundamental right to be free from retaliatory prosecution aimed at punishing her for protected activity—a right that cannot adequately be vindicated post-trial.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Department of Justice wields formidable prosecutorial power, ultimately encompassing the authority to deprive persons of liberty. That authority is appropriately entrusted not to partisans, but to stewards of justice who are bound by the Constitution and other legal and ethical guardrails. As alumni who collectively served within the Department for decades, Amici hold steadfast to the bedrock notion that it is the obligation of federal prosecutors to seek justice, without fear or favor.

The circumstances surrounding this case reflect a disturbing departure from that venerable principle. In May 2025, Congresswoman LaMonica McIver and two other Representatives engaged in what the government acknowledged was a "congressional oversight inspection" of the Delaney Hall immigration detention facility in Newark, New Jersey. *See* Op.2. After the

Newark Mayor arrived at the facility and was ushered through a security fence by a guard, Department of Homeland Security ("DHS") officials aggressively intervened and ultimately arrested the Mayor for trespassing—charges the government dismissed only 12 days later. In a scuffle arising out of those aggressive efforts to arrest the Mayor that lasted little more than a minute, McIver made brief physical contact with DHS officials, at least two of whom deployed significantly greater force against her. The DHS officials sustained no injuries from the fleeting encounter. Shortly thereafter, McIver and the other Representatives were permitted to resume their inspection. Nonetheless, the government charged McIver with two felony counts of forcibly assaulting federal officials, in violation of 18 U.S.C. § 111(a)—a statute which, in Amici's experience, is typically used in far different circumstances, often involving significant violence or physical harm.

Taken together, the totality of circumstances demonstrates that the indictment of Congresswoman McIver was not an exercise of the evenhanded judgment of a disinterested prosecutor, as required by the Constitution and the Justice Department's formal policies. Instead, it represents a partisan prosecution of a perceived political adversary engaged in protected congressional oversight responsibilities. Such a vindictive and targeted prosecution, undertaken "[t]o punish a person" with criminal charges for

doing something that "the law plainly allows [her] to do"—including speaking out to criticize the government and fulfilling responsibilities as an elected official—is "a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).

Moreover, the unconstitutionally selective nature of this retaliatory prosecution is only heightened by the stark contrast between this case and the government's decisions to dismiss indictments against defendants prosecuted under Section 111 for their egregiously violent conduct at the U.S. Capitol on January 6, 2021. In comparison to the brief scuffle at issue here, Amici are personally aware that those January 6 cases often involved sustained and violent assaults, frequently with dangerous weapons, causing significant physical injuries to law enforcement officers. And unlike the statutorily authorized congressional inspection here, the January 6 defendants breached the Capitol in an unlawful attempt to thwart the results of a valid presidential election. The Constitution does not permit the Executive Branch to selectively wield its formidable prosecutorial power based on defendants' political views, partisan affiliation, or exercise of lawful rights. Yet the record in this case—particularly when contrasted with those other Section 111 prosecutions—leads to the unmistakable conclusion that such impermissible considerations motivated the indictment here.

The district court thus erred by failing to dismiss the indictment against Congresswoman McIver. At a minimum, as Judge Ambro noted in his partial dissent from this Court's panel opinion, the district court's refusal to even permit discovery into Congresswoman McIver's vindictive and selective prosecution claims evinced significant "analytical flaws"—including by categorically ignoring clear evidence of Executive Branch animus toward the Congresswoman and her protected oversight activity, and by perversely rejecting her selective prosecution claim on the upside-down ground that she is distinguishable from her comparators (January 6 defendants) by virtue of being "*less* criminally culpable than" them. Dissent.16-22.

For its part, the panel majority did not engage with the merits of the selective and vindictive prosecution claims, concluding instead that this Court lacks appellate jurisdiction to review the district court's denial of those claims now because the constitutional rights implicated can supposedly be fully "vindicated after trial." Op.11-12. But that conclusion, too, was wrong. A legislator cannot effectively vindicate her right to be free from retributive, selectively targeted, or politically biased prosecution after the fact. The panel majority failed to recognize the "extraordinary" circumstances present here, where refusing to correct the district court's errors would not only allow the government to exact partisan-motivated revenge against a sitting Member of

Congress by forcing her to withstand trial, but also would inevitably chill future exercises of similar oversight activity. Dissent.14-16. Judge Ambro got it exactly right when he observed that retaliatory prosecutions like this one strike at the very "constitutional foundation of our government." Dissent.15. Under these unique and highly fraught circumstances, this Court should grant rehearing en banc.

## ARGUMENT

Congresswoman McIver's petition compellingly argues that rehearing en banc is warranted to safeguard her legislative immunity and to bring this Court's approach to such claims in line with other Circuits. Pet.7-17. Given their professional experiences, Amici focus here primarily on McIver's other claims: that her indictment was unconstitutionally vindictive and selective. Although the panel dismissed those claims on jurisdictional grounds, Amici agree with the Congresswoman that rehearing en banc is necessary on those claims, as well—both to recognize the extraordinary circumstances that render interlocutory appellate review appropriate in this instance and to correct the serious "analytical flaws" in the district court's reasoning. Dissent.16.

## I. The Panel's Jurisdictional Holding Ignores the Unique Circumstances of This Case.

Amici recognize that in the mine-run prosecutorial-vindictiveness case—where a defendant asserts a garden-variety claim that the government retaliated by adding new charges following his exercise of a procedural right—interlocutory appellate review is typically unavailable. *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 264-65 (1982). That makes good sense, because such violations can "normally" be remedied post-trial by the simple expedient of vacating any conviction on the additional charges. *Id.* at 268.

But not so here. This case presents the exceptional circumstance where "the legal and practical value" of the right at issue—a sitting legislator's right to be free from retaliatory and politically motivated prosecution—"would be destroyed if it were not vindicated before trial." *Id.* at 266 (quoting *United States v. MacDonald*, 435 U.S. 850, 860 (1978)). As Judge Ambro correctly noted in dissent, "[b]y the time the retaliatory prosecution of a legislator reaches final judgment," the damage has already been done—both to the individual defendant and, more broadly, "to our representative government" and its system of separation of powers. Dissent.15. This case illustrates the danger: If Congresswoman McIver can be forced to stand trial, on charges brought in retaliation for her protected legislative oversight activity, the

Executive will already have been permitted to "successfully intimidate its coequal branch." *Id.* The end result is that "likeminded lawmakers" will inevitably and "irreparably [be] deterred from fulfilling their constitutional roles as checks on executive power." *Id.* And all the while, Congresswoman McIver's time, attention, and resources will have been diverted away from her official responsibilities to her constituents—responsibilities that include oversight of federal immigration detention facilities within her jurisdiction.

Rehearing en banc is warranted to recognize these extraordinary circumstances and to ensure that the Executive Branch may not target a disfavored Member of Congress for prosecution free from any appellate review. Moreover, particularly given that this Court already unquestionably has jurisdiction to review the Congresswoman's legislative immunity claims under the Speech or Debate Clause now, "little would be lost in the way of judicial efficiency if [this] pre-trial appeal[] by [an] indicted Member[] of Congress were to include all legal defenses." *United States v. Myers*, 635 F.2d 932, 936 (2d Cir. 1980). Granting rehearing en banc would thus have the added benefit of affording this Court an opportunity to align its jurisprudence on pre-trial appellate jurisdiction over such legislator-defendant claims with that of the Second Circuit.

## II. The Panel's Opinion Leaves Uncorrected Significant Errors By the District Court.

Rehearing is also necessary because the panel's mistaken conclusion that appellate jurisdiction is unavailable at this juncture "le[ft] uncorrected" the "untenable" reasoning and serious "analytical flaws" in the district court's ruling. Dissent.16-18. The district court rejected Congresswoman McIver's vindictive and selective prosecution claims out of hand, going so far as to deny her an opportunity to conduct discovery on those claims. But it reached that result only by applying a blinkered approach to the vindictiveness claim that categorically ignored clear evidence of Executive Branch animus toward McIver and her oversight activity. Meanwhile, the district court got its analysis of the selective prosecution claim exactly backwards, applying an assessment of the relative culpability of the Congresswoman *vis-à-vis* her January 6 Capitol Siege defendant-comparators that stands selective prosecution jurisprudence on its head.

### A. Vindictive Prosecution

This case presents the "rare" (although, in recent days, disturbingly more common) situation where "actual vindictiveness" and unconstitutionally retributive animus are apparent from the public record. *United States v. Johnson*, 171 F.3d 139, 140-41 (2d Cir. 1999) (quoting *United States v. Goodwin*, 457 U.S. 368, 384 n.19 (1982)). As McIver's brief on

appeal ably explained, DHS, the Department of Justice, and the President have all made public statements evincing hostility toward the Congresswoman, her oversight activity, and her political party. App.Br. 52-53; 61-62. In the wake of the relevant incident, DHS officials also "repeatedly disseminat[ed] falsehoods" about McIver's conduct. Dissent.17. These public statements were made alongside a pattern of DHS opposition to oversight of its immigration detention facilities, including the adoption of highly restrictive and "likely unlawful" policies limiting congressional access, and the agency's "inexplicable delay" of the inspection of Delaney Hall. *Id.*

Against this troubling backdrop, the district court uncritically accepted the government's proffered justification for indicting McIver—notwithstanding that the government could not "identif[y] a single other case where a defendant was charged under 18 U.S.C. § 111(a) for comparably minimal physical contact." Dissent.17. The court did so by categorically deeming all "DHS statements and actions . . . irrelevant," thereby ignoring a significant body of case law holding that "non-prosecutor" Executive Branch statements evincing "'ill will'" toward a defendant are relevant when—as appears to be the case here—they "'actually motivated [the] prosecution.'" Dissent.18 (quoting *United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996); citing *United States v. Adams*, 870 F.2d 1140, 1145-46 (6th Cir. 1989)).

At a minimum, as the panel dissent concluded, Congresswoman McIver has raised a sufficient inference of retributive animus to be entitled to discovery on her vindictive prosecution claim. Dissent.18-19. In Amici's view, that is particularly so given the many troubling ways in which this case diverged from longstanding Justice Department policies and practices.[2]

**B. Selective Prosecution**

The district court's analysis of Congresswoman McIver's selective prosecution claim was at least equally flawed. The Congresswoman identified as relevant comparators the defendants prosecuted (many by Amici) under Section 111 in connection with the U.S. Capitol attack on January 6, 2021. Based on their personal experiences prosecuting those cases, Amici strongly endorse Judge Ambro's conclusion that "[w]hen assessed against legitimate factors, [the January 6 defendants] were far more culpable than [McIver] is: many of them were armed, and she was not; they were unlawfully present, and she was not; many of them had criminal records, and she did not; many of them caused injuries, and she did not."

---

[2] For example, the Department suspended its policy requiring consultation with the Public Integrity Section before prosecuting political figures mere weeks before filing charges in this case. *See* App.Br. 54. And the above-described public Executive Branch statements strongly indicate that this prosecution was improperly driven by Congresswoman McIver's "political association, activities, or beliefs," in direct contravention of the Justice Manual. *See* Dep't of Justice, Justice Manual § 9-27.260.

Dissent.19-20. Indeed, the Capitol Siege attacks included the assaults of "over 140 police officers," involving a wide variety of dangerous weapons,[3] and resulting in serious physical injuries to law enforcement officers, including from being "crushed by the rioters" and "beaten in the head."[4]

Perversely, the district court found that the stark differences between the January 6 defendants' egregious conduct and the relatively minor scuffle at Delaney Hall somehow disqualified those defendants from being "similarly situated" comparators for purposes of Congresswoman McIver's selective prosecution claim. Dissent.20. But that gets matters exactly backwards: Selective prosecution doctrine asks whether the government can identify "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions" for Congresswoman McIver (whom the government is actively prosecuting), as compared to the January 6 defendants (whose convictions and indictments have now all been dismissed).[5] *Frederick Douglass Found., Inc. v. D.C.*, 82 F.4th 1122, 1137

---

[3] U.S. Atty's Off., Dist. of Columbia, *48 Months Since the Jan. 6 Attack on U.S. Capitol* (Jan. 6, 2025), https://perma.cc/S9EF-ZK43.

[4] Mary Clare Jalonick, *Officers who defended the Capitol on Jan. 6 say their struggles linger,* Los Angeles Times (Jan. 4, 2026), https://perma.cc/LHR2-QHJH.

[5] The district court also erred by finding that the January 6 comparators were not similarly situated because they were all supposedly

(D.C. Cir. 2023) (internal quotations omitted). As the dissent correctly found: "Congresswoman McIver is *less* criminally culpable than her comparators. That means there was no legitimate reason to dismiss their charges but not hers. The differences between Congresswoman McIver and the comparators make it more likely, not less, that she was prosecuted selectively." Dissent.20.

At a minimum, Amici agree with Judge Ambro that this record easily contains "some evidence" of selectively biased prosecution, requiring remand for further discovery. *United States v. Washington*, 869 F.3d 193, 220-21 (3d Cir. 2017).

## CONCLUSION

This Court should grant rehearing en banc.

Respectfully submitted,

/s/ James I. Pearce
JAMES I. PEARCE
SAMANTHA P. BATEMAN
WASHINGTON LITIGATION GROUP
1717 K St NW
Suite 1120
Washington, DC 20006
202-521-8750
jpearce@washingtonlitigationgroup.org
sbateman@washingtonlitigationgroup.org

Dated: October 16, 202

*Counsel for Amici Curiae*

---

pardoned—entirely ignoring the defendants with pending indictments as of the January 2025 Inauguration Day presidential proclamation, whose pending charges were dismissed outright. Dissent.20-21.

## CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Local R. 28.3(d) and Local R. 46.1(e), I certify that I, James I. Pearce, am admitted as an attorney and counselor of the United States Court of Appeals for the Third Circuit.

/s/ James I. Pearce
JAMES I. PEARCE
WASHINGTON LITIGATION GROUP
1717 K St NW
Suite 1120
Washington, DC 20006
202-521-8750
jpearce@washingtonlitigationgroup.org

October 16, 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Local R. 31.1, I certify the following:

1. This brief complies with Fed. R. App. P. 29(b)(4) because it contains 2,574 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Georgia 14-point font using Microsoft Word 2018.

3. This brief complies with the electronic filing requirements of Local R. 31.1(c) because the text of the electronic brief is identical to the text of the paper copies and because OpenText was run on the file containing the electronic version of this brief and no viruses were detected.

/s/ James I. Pearce
JAMES I. PEARCE
WASHINGTON LITIGATION GROUP
1717 K St NW
Suite 1120
Washington, DC 20006
202-521-8750
jpearce@washingtonlitigationgroup.org

October 16, 2026

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on October 16, 2026. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ James I. Pearce
JAMES I. PEARCE
WASHINGTON LITIGATION GROUP
1717 K St NW
Suite 1120
Washington, DC 20006
202-521-8750
jpearce@washingtonlitigationgroup.org

October 16, 2026

## APPENDIX: LIST OF *AMICI CURIAE*

Amici include the following former federal prosecutors, listed along with their relevant positions at the time that they prosecuted January 6, 2021 Capitol Siege cases, and their dates of federal prosecutorial service:

- Brendan Ballou, former Attorney, Department of Justice (2016-2017, 2020-2025), detailed to District of Columbia United States Attorney's Office to handle January 6 cases (2023-2025)

- Mary L. Dohrmann, former Assistant United States Attorney, District of Columbia (2017-2025)

- Adam Dreher, former Assistant United States Attorney, District of Columbia (2022-2025)

- Michael Gordon, former Assistant United States Attorney, Middle District of Florida (2017-2025), detailed to District of Columbia United States Attorney's Office to handle January 6 cases (2021-2023), served as Senior Trial Counsel for the Capitol Siege Section

- Susan T. Lehr, former United States Attorney and Assistant United States Attorney, District of Nebraska (2000-2025), detailed to District of Columbia United States Attorney's Office to handle January 6 cases (2021-2023)

- Jason M. Manning, former Trial Attorney, Criminal Division, Fraud Section (2017-2024), detailed to District of Columbia United States Attorney's Office to handle January 6 cases (2022-2024)

- James I. Pearce, former Attorney, Criminal Division, Appellate Section (2013-2025); detailed to detailed to District of Columbia United States Attorney's Office to handle January 6 cases (2021-2023), served as Senior Appellate Counsel of the Capitol Siege Section

- Gregory P. Rosen, former Assistant United States Attorney, District of Columbia (2015-2025), served as Chief of the Capitol Siege Section

- Karen Rochlin, former Assistant United States Attorney, Southern District of Florida (1989-2025); detailed to detailed to District of Columbia United States Attorney's Office to handle January 6 cases (2021-2025), served as Deputy Chief of the Capitol Siege Section

- Andrew Tessman, former Assistant United States Attorney, Southern District of West Virginia (2019-2025), detailed to detailed to District of Columbia United States Attorney's Office to handle January 6 cases (2022-2025)

- Francesco Valentini, former Attorney, Criminal Division, Appellate Section (2016-2025), detailed to detailed to District of Columbia, United States Attorney's Office to handle January 6 cases (2022-2024), served as Deputy Chief of the Capitol Siege Section