**Nos. 25-3573, 26-1122**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

UNITED STATES OF AMERICA,

Appellee,

v.

LaMONICA McIVER,

Appellant.

On Appeal From the United States District Court for the District of New Jersey
No. 25-cr-388
Honorable Jamel K. Semper, U.S.D.J.

# BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY, NATIONAL WOMEN'S LAW CENTER, AND NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC. IN SUPPORT OF APPELLANT'S PETITION FOR REHEARING *EN BANC*

JEANNE LOCICERO
EZRA D. ROSENBERG
LIZA F. WEISBERG
AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY FOUNDATION
570 Broad Street, 11th Floor
P.O. Box 32159
Newark, New Jersey 07102
(973) 854-1714

LAWRENCE S. LUSTBERG
MICHAEL R. NOVECK
ANDREW J. MARINO
JOHN J. GIBBONS FELLOWSHIP IN PUBLIC INTEREST AND CONSTITUTIONAL LAW
FBT GIBBONS LLP
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

*Counsel for* Amici Curiae

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........ ii

CORPORATE DISCLOSURE STATEMENT ........ 1

STATEMENT OF *AMICI CURIAE* ........ 2

PRELIMINARY STATEMENT ........ 4

ARGUMENT ........ 5

I. THE PANEL'S OPINION UNDERMINES THE SEPARATION-OF-POWERS PRINCIPLES ANIMATING THE SPEECH OR DEBATE CLAUSE ........ 5

II. THE PANEL'S FAILURE TO EXERCISE JURISDICTION OVER CONGRESSWOMAN MCIVER'S SELECTIVE AND VINDICTIVE PROSECUTION CLAIM ABDICATED ITS RESPONSIBILITY TO ADJUDICATE DISPUTES BETWEEN THE EXECUTIVE AND LEGISLATIVE BRANCHES ........ 11

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abney v. United States*,
431 U.S. 651 (1977)....................13

*CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*,
381 F.3d 131 (3d Cir. 2004)....................11

*Dombrowski v. Eastland*,
387 U.S. 82 (1967)....................14

*Eastland v. U.S. Servicemen's Fund*,
421 U.S. 491 (1975)....................7

*Flanagan v. United States*,
465 U.S. 259 (1984)....................12

*Government of Virgin Islands v. Lee*,
775 F.2d 514 (3d Cir. 1985)....................9

*Gravel v. United States*,
408 U.S. 606 (1972)....................10

*Helstoski v. Meanor*,
442 U.S. 500 (1979)....................13, 14

*Kilbourn v. Thompson*,
103 U.S. 168 (1881)....................6

*Midland Asphalt Corp. v. United States*,
489 U.S. 794 (1989)....................12

*Neguse v. U.S. Immigr. & Customs Enf't*,
822 F. Supp. 3d 86 (D.D.C. 2026)....................8

*Tenney v. Brandhove*,
341 U.S. 367 (1951)....................6, 10

*Trump v. United States*,
603 U.S. 593 (2024)....................13, 14

*United States v. Helstoski*,
442 U.S. 477 (1979)....................7

*United States v. Hollywood Motor Car Co.*,
458 U.S. 263 (1982)....................13, 14

*United States v. Johnson*,
383 U.S. 169 (1966)....................5, 6, 7, 10

*United States v. McDade*,
28 F.3d 283 (3d Cir. 1994)....................10

*United States v. Menendez*,
831 F.3d 155 (3d Cir. 2016)....................12

*United States v. Nixon*,
418 U.S. 683 (1974)....................14

*United States v. Rostenkowski*,
59 F.3d 1291 (D.C. Cir. 1995)....................12

*United States v. Trump*,
91 F.4th 1173 (D.C. Cir.), *rev'd on other grounds*, 603 U.S. 593 (2024)....................13

**Other Authorities**

Articles of Confederation of 1781....................6

*DHS Announces ICE Law Enforcement are Now Facing an 830 Percent Increase in Assaults*, DHS (July 15, 2025), https://perma.cc/7YZP-PGWS....................8

*Members of Congress Break into Delaney Hall Detention Center*, DHS (May 9, 2025), https://perma.cc/G6MH-2KXF....................8

Santul Nerkar, *Letitia James Is Among Prominent Black Women Targeted by Trump*, N.Y. Times (Oct. 10, 2025)....................9

Story, Commentaries on the Constitution § 866....................6, 7

II The Works of James Wilson 37-38 (Andrews ed. 1896)....................6

*Trump Defends McIver Charges*, Axios (May 20, 2025), https://bit.ly/3PwNx9E....................9

U.S. Const. art. I, § 6, cl. 1....................5

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for *amici* certify that (1) *amici* do not have any parent corporations, and (2) no publicly held companies hold 10% or more of the stock or ownership interest in *amici*.

## STATEMENT OF *AMICI CURIAE*[1]

*Amicus Curiae* American Civil Liberties Union of New Jersey ("ACLU-NJ") is a private, non-profit, non-partisan membership organization. For over 60 years, the ACLU-NJ has defended liberty and justice, guided by its mission to preserve, advance, and extend the individual rights and liberties guaranteed to every New Jerseyan by the State and Federal Constitutions. Founded in 1960 and based in Newark, the ACLU-NJ operates on several fronts—legal, political, cultural—to accomplish these goals. The ACLU-NJ is the state affiliate of the American Civil Liberties Union, which was founded in 1920 for identical purposes, and is composed of over one million members nationwide. The ACLU-NJ is committed to challenging abuses of power, defending political expression, and fighting for a freer and fairer democracy. It files this brief consistent with that commitment.

*Amicus Curiae* National Women's Law Center ("NWLC") fights for gender justice—in the courts, in public policy, and in our society—working across the issues that are central to the lives of women and girls. NWLC uses the law in all its forms to drive solutions to the gender inequity that shapes our society and to break down the barriers that harm all of us—especially women of color, LGBTQ+ people, and

[1] *Amici* are simultaneously filing a motion to participate as *amici curiae* under Fed. R. App. P. 29(b)(2). No party or party's counsel authored this brief in whole or in part, and no person or entity contributed money to fund the preparation or submission of this brief, other than *Amici* and their counsel.

low-income women and families. Since its founding in 1972, NWLC has participated as counsel or *amicus curiae* in a range of cases in the U.S. Supreme Court and the lower courts. As an organization that fights for gender justice, NWLC recognizes that its work depends on a fair and functioning democracy, and that progress has been possible because women have been able to exercise their right to vote for leaders who represent them and their interests, and who will speak on their behalf. However, women—particularly Black women—face disproportionate scrutiny and retribution when they challenge systems of power. Decisive protection of legislative immunity is essential to prevent these abuses, to ensure that Congress can conduct oversight and function as a co-equal branch of government, and to enable elected leaders, especially Black women, to fully represent their communities.

*Amicus Curiae* NAACP Legal Defense & Educational Fund, Inc. ("LDF") is the nation's first and foremost civil rights legal organization. Through litigation, advocacy, public education, and outreach, LDF strives to secure the constitutional promise of equal justice under the law for all Americans, and to break down barriers that prevent African Americans from realizing their basic civil and human rights. As relevant here, LDF has long been committed to defending our democratic institutions, protecting against governmental abuses of power, and opposing the use of selective prosecution.

**PRELIMINARY STATEMENT**

This case arises during an extraordinary time, and "this is an extraordinary case"—a "potential retaliatory criminal prosecution[] against [a] Member[] of Congress." Dissent 14. The facts demonstrate that Congresswoman LaMonica McIver is charged for actions that she took while performing her statutorily authorized oversight duties at an immigration detention facility. The Congresswoman has consistently, and persistently, opposed the Executive Branch's immigration policy. And the Executive has targeted its political enemies—especially Black women like Lisa Cook, Letitia James, Fani Willis, Ilhan Omar, and Congresswoman McIver—while not prosecuting those whose political views it supports when they engage in similar conduct.

In extraordinary times like these, the courts play a special role in checking Executive overreach. The Constitution immunizes legislative conduct from prosecution under the Speech or Debate Clause and prohibits prosecutions based upon invidious viewpoint discrimination. These principles are rooted in the separation of powers that this Court is duty-bound to zealously protect, lest our longstanding system of checks and balances be eroded when the Executive Branch punishes and chills the political speech of those who dare oppose its policies.

The panel majority's opinion failed to safeguard these principles. Despite Judge Ambro's apt observation that the Speech or Debate Clause serves to

"'reinforce[] the separation of powers,'" and that "these concerns loom large in this case," Dissent 10 (quoting *United States v. Johnson*, 383 U.S. 169, 178 (1966)), the majority ruled, based upon a crabbed view of the indictment, that the "specific and limited conduct charged . . . is unambiguously non-legislative." Maj. Op. 18 (discussing Count One); Maj. Op. 19 (discussing Count Two).

The majority's opinion should not be allowed to stand. It threatens core principles of our democratic government and places a judicial imprimatur on a politically retaliatory criminal prosecution. *Amici curiae* urge this Court to fulfill its constitutional responsibility by prohibiting the Executive Branch's abuse of power and dismissing this unlawful prosecution.

## ARGUMENT

### I. THE PANEL'S OPINION UNDERMINES THE SEPARATION-OF-POWERS PRINCIPLES ANIMATING THE SPEECH OR DEBATE CLAUSE

The Constitution's Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1, was born of historical English battles between the monarchy and parliament. The Tudor and Stuart monarchs used both civil and criminal law against the House of Commons as a means "to suppress and intimidate critical legislators." *Johnson*, 383 U.S. at 178 (citations omitted). An oft-cited example is Charles I's prosecution of Sir John Eliot for "seditious" speeches in Parliament that advocated for the rights of Parliament; for his offense of disagreeing with the King, he was imprisoned in the

Tower of London. *Id.* at 181 & n.10; *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951).

The overthrow of James II, the last Stuart king, and the accession of William and Mary in the Glorious Revolution of 1688 resulted in the English Bill of Rights of 1689, "the culmination of a long struggle for parliamentary supremacy." *Johnson*, 383 U.S. at 178. That charter included the predecessor to the American Speech or Debate Clause: "the Freedom of Speech, and Debates or Proceedings in Parliament, ought not to be impeached or questioned in any Court or Place out of Parliament." *Id.* (quoting 1 W. & M., Sess. 2, c. 2). Similar codifications of legislative immunity appeared in American colonial charters and early state constitutions, *Kilbourn v. Thompson*, 103 U.S. 168, 202–03 (1881); *Tenney*, 341 U.S. at 372–73, and the Articles of Confederation of 1781, art. V. *See Johnson*, 383 U.S. at 177.

Ultimately, the English principle of legislative immunity was incorporated into the United States Constitution's Speech or Debate Clause, which commentators recognized as "an important protection of the independence and integrity of the legislature." *Johnson*, 383 U.S. at 178 (citing Story, Commentaries on the Constitution § 866; II The Works of James Wilson 37–38 (Andrews ed. 1896)); *see also Kilbourn*, 103 U.S. at 202 (holding that it "may be reasonably inferred that the framers of the Constitution" meant to incorporate the principles underlying English law's legislative privilege when they "use[d] . . . language borrowed from that

source”). To provide sufficient protection for legislators, the Supreme Court has instructed that the Clause is to be construed “broadly.” *Eastland v. U.S. Servicemen’s Fund*, 421 U.S. 491, 501–03 (1975).

From the outset, the United States’s version of legislative immunity expressly served the “additional function” of bolstering the “separation of powers so deliberately established by the Founders.” *Johnson*, 383 U.S. at 178–79. Thus, the Clause’s purpose “was to preserve the constitutional structure of separate, coequal, and independent branches of government.” *United States v. Helstoski*, 442 U.S. 477, 491 (1979) (“*Helstoski I*”). Indeed, Justice Story wrote that “[t]he next great and vital privilege is the freedom of speech and debate, without which all other privileges would be comparatively unimportant or ineffectual.” Story, Commentaries on the Constitution § 866 (1833). The “predominate thrust of the Speech or Debate Clause,” then, is “to prevent intimidation by the executive” through “the instigation of criminal charges against critical or disfavored legislators by the executive in a judicial forum.” *Johnson*, 383 U.S. at 181–82.

There can be no doubt that this prosecution implicates that protection. Oversight of immigration enforcement has been Congresswoman McIver’s particular focus since joining the House of Representatives. A6 & n.3 (noting that “[s]ince joining Congress, [Congresswoman McIver] has focused on executive immigration action in New Jersey,” and citing her oversight visit of an ICE detention

facility, meeting with ICE officials, and multiple "written letters to DHS Secretary Kristi Noem to express concern over ICE's operation in New Jersey including its treatment of detainees in private detention centers"). Congress has prohibited the Department of Homeland Security from interfering with that oversight. *See Neguse v. U.S. Immigr. & Customs Enf't*, 822 F. Supp. 3d 86, 94–95 (D.D.C. 2026) (discussing Congress's "Section 527" appropriations rider, which "entitle[s] Members of Congress to enter ICE facilities without being subject to a notice requirement"). But the Executive Branch opposes the Congresswoman's efforts and has made clear that this prosecution is part and parcel of that opposition. Beyond representing, completely inaccurately, that Members of Congress "stormed the gate and broke into the detention facility," *Members of Congress Break into Delaney Hall Detention Center*, DHS (May 9, 2025), https://perma.cc/G6MH-2KXF, it has described this conduct as a "political stunt," *id.*, and has tied Congresswoman McIver's actions to her political affiliation, specifically referring to her as a "Democratic member[] of Congress" in discussing this case. *DHS Announces ICE Law Enforcement are Now Facing an 830 Percent Increase in Assaults*, DHS (July 15, 2025), https://perma.cc/7YZP-PGWS. And when asked about the charges against Congresswoman McIver, the President represented that "[t]he days of woke are over," making clear that Congresswoman McIver's political views were the

impetus for her prosecution. *Trump Defends McIver Charges*, Axios (May 20, 2025), https://bit.ly/3PwNx9E.

Indeed, the prosecution of Congresswoman McIver is just one of many Executive Branch efforts to weaponize criminal investigations and prosecutions against Black women whom it perceives as political enemies. *See, e.g.*, Santul Nerkar, *Letitia James Is Among Prominent Black Women Targeted by Trump*, N.Y. Times (Oct. 10, 2025), https://bit.ly/47WaHMk. By contrast, the Executive Branch dismissed prosecutions against its perceived political allies—like those "who stormed the United States Capitol on January 6, 2021"—even though "they were far more culpable than [Congresswoman McIver] is." Dissent 19.

The panel majority's opinion improperly divorces the indictment against Congresswoman McIver from this context. It declined to apply this Court's holding in *Government of Virgin Islands v. Lee*, 775 F.2d 514, 524–25 (3d Cir. 1985), that a legislator's conduct in a Speech or Debate prosecution must be viewed "as a whole." Maj. Op. 17. Instead, it narrowly focused on "the discrete act[s] charged." Maj. Op. 19. As Judge Ambro's dissent explained, the majority's approach "defies common sense" because the acts charged and Congresswoman McIver's oversight "were inextricably connected." Dissent 9. In this way, "the majority glosses over the unique separation-of-powers concerns this case presents." Dissent 10.

Congresswoman McIver's rigorous oversight and investigation of Executive conduct are core functions of the Legislative Branch. *See United States v. McDade*, 28 F.3d 283, 304 (3d Cir. 1994) (Scirica, J., concurring in part and concurring in the judgment) ("[O]versight is the way Congress evaluates legislation, and in the appropriate manner, monitors the operations of executive departments and agencies. Properly done, oversight is part of our system of checks and balances."). Because this case involves Executive Branch interference with that oversight, it is particularly important that the Speech or Debate Clause's "fundamental purpose" be brought to bear: to "free[] the legislator from executive and judicial oversight that realistically threatens to control [her] conduct as a legislator," *Gravel v. United States*, 408 U.S. 606, 618 (1972), and to protect legislators' "uninhibited discharge of their legislative duty, not for their private indulgence but for the public good," *Tenney*, 341 U.S. at 377. The panel's opinion instead allows the Executive to bring to bear its vast prosecutorial power "to suppress and intimidate critical legislators," *Johnson*, 383 U.S. at 178, even though the "instigation of criminal charges against critical or disfavored legislators by the executive in a judicial forum" is precisely what the Speech or Debate Clause was designed to prevent, *id.* at 181–82.

For these reasons, *amici* urge this Court to grant rehearing *en banc*, vacate the panel's opinion, and assess this case in accordance with the separation-of-powers principles animating the Speech or Debate Clause.

## II. THE PANEL'S FAILURE TO EXERCISE JURISDICTION OVER CONGRESSWOMAN MCIVER'S SELECTIVE AND VINDICTIVE PROSECUTION CLAIM ABDICATED ITS RESPONSIBILITY TO ADJUDICATE DISPUTES BETWEEN THE EXECUTIVE AND LEGISLATIVE BRANCHES

*Amici* respectfully submit that the same separation-of-powers principles described above also apply to the selective and vindictive prosecution issues presented in this case. In the extraordinary context here—criminal charges against a sitting legislator, of the opposite political party as the President, who has been avowedly critical of the President's immigration policies, and who is charged for conduct occurring when she was exercising her oversight of the implementation of those policies—a prosecution motivated by these improper purposes also offends the separation of powers.

The panel majority, however, declined to even consider these arguments, instead holding that it lacked appellate jurisdiction to review the denial of Congresswoman McIver's claim before trial. Maj. Op. 6–13. This was error for two reasons. First, because separation-of-powers principles undergird both the selective and vindictive prosecution claim and the Speech or Debate claim, and they are both based upon Congresswoman McIver's speech as a legislator and her political position as a member of the opposite party of the President, there is "sufficient overlap in the facts relevant to both . . . issues" to create an "umbilical connection" that "is not neatly severed." *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381

F.3d 131, 136 (3d Cir. 2004). This at the very least supports extending pendent appellate jurisdiction over the selective and vindictive prosecution claim. *See United States v. Menendez*, 831 F.3d 155, 164 (3d Cir. 2016).

Second, even absent pendent jurisdiction, the Court should apply the collateral order doctrine to Congresswoman McIver's claim under the circumstances of this case. To be sure, the panel majority correctly recognized that the Supreme Court has interpreted the collateral order exception "with the utmost strictness in criminal cases." Maj. Op. 8 (quoting *Flanagan v. United States*, 465 U.S. 259, 265 (1984)). But that limitation is only a "general rule," *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989), and should not apply to "extraordinary" and "atypical" cases such as this one, Dissent 14.

Indeed, the Court of Appeals for the District of Columbia Circuit has recognized that separation-of-powers claims are immediately appealable "[f]or similar reasons" as Speech or Debate claims. *United States v. Rostenkowski*, 59 F.3d 1291, 1297 (D.C. Cir. 1995). More recently, that court applied the same principles to President Trump's appeal of the denial of immunity from prosecution after his departure from office, reasoning that "[h]is separation of powers argument . . . is closely akin to a claim of Speech or Debate Clause immunity, making it immediately appealable because there are equivalent reasons for vindicating it in advance of

trial." *United States v. Trump*, 91 F.4th 1173, 1187 (D.C. Cir.) (citation modified), *rev'd on other grounds*, 603 U.S. 593 (2024).

As Justice Barrett's concurrence in *Trump v. United States* recognized, an appeal challenging "whether the Constitution allows Congress to criminalize the alleged conduct" is "a question that is 'collateral to, and separable from' his guilt or innocence." 603 U.S. 593, 654 (2024) (Barrett, J., concurring in part) (quoting *Abney v. United States*, 431 U.S. 651, 659 (1977)). Here, too, Congresswoman McIver's argument that this prosecution is improper because it embodies the Executive Branch's effort to criminalize conduct based upon political party membership and political speech is separable from whether she actually committed the offense alleged. That is, this appeal seeks to vindicate Congresswoman McIver's "as-applied constitutional challenge" to Executive Branch action in prosecuting the conduct of a legislator. *Id.* at 655 (citing *Helstoski v. Meanor*, 442 U.S. 500, 507–08 (1979) ("*Helstoski II*"), and *Abney*, 431 U.S. at 659–61). The selective and vindictive prosecution claim—like the Speech or Debate Clause argument—thus implicates separation-of-powers principles.

The panel majority was therefore incorrect to analogize this case to *United States v. Hollywood Motor Car Co.*, 458 U.S. 263 (1982). Maj. Op. 9. Even if there is some "surface-level resemblance" between this case and *Hollywood Motor Car*, "the Supreme Court's reasoning . . . is far removed from cases involving potentially

retaliatory criminal prosecutions against Members of Congress." Dissent 14. There, the defendants, who were not public officials, claimed a vindictive motive resulting from their motion for a change of venue. *Hollywood Motor Car*, 458 U.S. at 267. Here, Congresswoman McIver asserts that the Government seeks to prosecute her for core political and legislative activities: speaking out about immigration policies, overseeing immigration detention facilities, and criticizing Executive Branch officials. The motives here, which were designed to challenge Congresswoman McIver's legislative authority and "could distort [her] decisions while in office," are thus indistinguishable from the ones that animated the right to an interlocutory appeal in *Trump*, 603 U.S. at 654–55 (Barrett, J., concurring), and in *Helstoski II*, 442 U.S. at 508 (explaining that interlocutory appeal was appropriate because "the Speech or Debate Clause was designed to protect Congress[people] 'not only from the consequences of litigation's results but also from the burden of defending themselves'" (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967))).

In sum, the panel's decision not to address the merits of Congresswoman McIver's claim abdicated its judicial responsibility to referee disputes between the Executive and Legislative Branches, particularly in the context of criminal prosecutions. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 707 (1974) (discussing "the primary constitutional duty of the Judicial Branch to do justice in criminal prosecutions" in rejecting absolute executive privilege); *Helstoski II*, 442 U.S. at 506

(explaining that Speech or Debate Clause's restrictions on Executive Branch's criminal prosecutions of Legislative Branch officials "are vitally important to our system of government and therefore are entitled to be treated by the courts with the sensitivity that such important values require"). And, of course, this Court has the obligation to protect those separation-of-powers principles from the evisceration that the Executive seeks in this case, and—if allowed here—inevitably in others.

## CONCLUSION

For the reasons set forth above, *amici curiae* respectfully submit that the Court should grant rehearing *en banc*, reverse the judgment of the district court, and remand for the entry of an order dismissing the indictment.

Dated: October 16, 2026

s/ Lawrence S. Lustberg
LAWRENCE S. LUSTBERG
MICHAEL R. NOVECK
ANDREW J. MARINO
JOHN J. GIBBONS FELLOWSHIP IN PUBLIC
INTEREST AND CONSTITUTIONAL LAW
FBT GIBBONS LLP
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

*Counsel for* Amici Curiae

## COMBINED CERTIFICATIONS

I, Lawrence S. Lustberg, Esquire, hereby certify that:

1. This brief complies with the type-volume limitations of Fed. R. App. P. 29(b)(4), because it contains 2,594 words, calculated by the word processing system used in its preparation (Microsoft Word), and excluding the parts of the brief exempted by Fed. R. App. P. 32(f) as well as the statement required by Fed. R. App. P. 29(a)(4)(E).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman 14-point font.

3. The text of the electronic brief is identical to the text of the paper copies being filed.

4. The electronic brief has been prepared on a computer that is automatically protected with a virus detection program, namely a continuously updated version of CrowdStrike, version 7.37.20907.0, and no virus was detected.

5. I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

Dated: October 16, 2026

s/ Lawrence S. Lustberg
Lawrence S. Lustberg

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of October 2026, I caused a true copy of the foregoing to be filed through the Court's CM/ECF system, which will automatically serve all counsel of record.

Dated: October 16, 2026

s/ Lawrence S. Lustberg
Lawrence S. Lustberg